IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER G.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:21-CV-00122-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Christopher G.'s appeal from the decision of the Social Security Administration denying his application for supplemental security income. The Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

[4] *Richardson*, 402 U.S. at 390.

Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On February 19, 2019, Plaintiff filed an application for supplemental security income, alleging disability beginning on November 10, 1982.[7] Plaintiff sought benefits based on anxiety, depression, lower back pain, and Addison's disease.[8] The claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on March 8, 2021.[10] On April 16, 2021, the ALJ found that Plaintiff was not disabled.[11] The Appeals Council denied review on October 8, 2021,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

On December 15, 2021, Plaintiff filed his complaint in this case.[14] On March 10, 2022, both parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 205–19.

[8] *Id.* at 67.

[9] *Id.* at 78, 79.

[10] *Id.* at 37–66.

[11] *Id.* at 12–36.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 416.1481.

[14] Docket No. 4.

2

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on April 7, 2022.[16]

Plaintiff filed his Opening Brief on June 15, 2022.[17] The Commissioner's Answer Brief was filed on July 15, 2022.[18] Plaintiff filed his Reply Brief on August 1, 2022.[19]

B.    MEDICAL AND EMPLOYMENT HISTORY

Plaintiff claims that he has been disabled his whole life.[20] He received his GED in 2007, but he has never been employed.[21] Plaintiff has a history of mental health and physical impairments including Addison's disease; lumbar spine disorder; median nerve compromise at or near the bilateral wrists involving myelin; obesity; bipolar disorder; major depressive disorder; and anxiety.[22]

C.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 19, 2019, the application date.[23] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: Addison's disease; adrenal disorder; salt wasting congenital

---

[15] Docket No. 11.
[16] Docket Nos. 13–15.
[17] Docket No. 18.
[18] Docket No. 20.
[19] Docket No. 21.
[20] R. at 67.
[21] *Id.* at 68, 225.
[22] *Id.* at 17.
[23] *Id.*

adrenal hyperplasia from 21-hydroxylase deficiency; lumbar spine disorder; median nerve compromise at or near the bilateral wrists involving myelin; obesity; bipolar disorder; major depressive disorder; and anxiety.[24] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[25] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain physical and mental limitations.[26] The relevant limitations at issue here are the ability to perform simple, routine, and repetitive tasks, but not at a production-rate pace and without contact with the public.[27] At step four, the ALJ determined that Plaintiff has no past relevant work.[28] At step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[29]

### III. DISCUSSION

Plaintiff raises two issues in his brief: whether the ALJ erred by inadequately addressing discrepancies between the ALJ's RFC and the Dictionary of Occupational Titles ("DOT") descriptions for jobs the vocational expert ("VE") recommended; and whether the ALJ erred in her evaluation of the medical opinion evidence.

---

[24] *Id.*
[25] *Id.* at 18.
[26] *Id.* at 21–30.
[27] *Id.* at 21.
[28] *Id.* at 30.
[29] *Id.* at 30–31.

A. CONFLICT BETWEEN RFC, VE TESTIMONY, AND DOT

"On step five, after the claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the [Commissioner] to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy."[30] VE testimony that the plaintiff is capable of performing one or more occupations that exist in significant numbers is sufficient to meet the Commissioner's burden at step five.[31] However, when there was a conflict between the VE's testimony and the description in the DOT, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."[32]

Plaintiff argues that the ALJ erred when she relied on the VE's testimony because there were conflicts between the VE's proposed jobs, the requirements contained in the DOT for those jobs, and the ALJ's RFC determination. As discussed below, the VE's testimony is consistent with both the DOT and the RFC. Even if the Court assumed without deciding that there was a conflict, any error would be harmless because there would still be a significant number of jobs in the national economy that Plaintiff could perform.

---

[30] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

[31] *See* 20 C.F.R. § 404.1566(e); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990).

[32] *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

      i.      HOUSEKEEPING CLEANER

The VE testified that Plaintiff could work as a housekeeping cleaner.[33] Plaintiff argues that the ALJ erroneously relied on the VE's testimony because the housekeeping cleaner position requires contact with the public,[34] a job requirement in direct conflict with the ALJ's RFC determination.[35]

The DOT describes the housekeeping cleaner position as having the lowest possible level of interaction with people.[36] More specifically, the DOT entry indicates that "[t]aking [i]nstructions" is "[n]ot [s]ignificant."[37] As a result, the housekeeping cleaner job description is consistent with superficial contact with supervisors and coworkers and does not substantially conflict with the ALJ's RFC determination.

Additionally, the VE's testimony provides substantial evidence for the ALJ's decision. Before relying on the VE's testimony, the ALJ asked the VE several times if there were any conflicts between her testimony, the RFC, and the DOT job descriptions.[38] The VE repeatedly

---

[33] R at 63.

[34] DOT, 323.687–014, 1991 WL 672783 ("renders personal assistance to patrons").

[35] R. at 21.

[36] *See Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) ("The DOT rates the amount of interaction with people on a scale of 0-8, with 8 representing the lowest possible level of human interaction that exists in the labor force. That ranking describes the need to take instructions as only '[a]ttending to the work assignment instructions or orders of supervisor' with '[n]o immediate response required unless clarification of instructions or orders is needed.'").

[37] DOT, 323.687–014, 1991 WL 672783.

[38] R. at 62, 64.

confirmed—based on her education, training, and experience—that the housekeeping cleaner position remained with no public contact.[39]

Finally, even if this job was eliminated, any error would be harmless because there would still be a significant number of jobs in the national economy that Plaintiff could perform.

    ii.       MERCHANDISE MARKER AND ROUTING CLERK

Plaintiff also contends the ALJ erred when she relied on the VE's testimony that Plaintiff could work as a merchandise marker or routing clerk. Plaintiff argues that since both jobs require a reasoning level of two,[40] they are inconsistent with Plaintiff's RFC limitation to perform simple, routine, and repetitive tasks.[41]

In *Hackett v. Barnhart*, the Tenth Circuit held that a limitation "for simple and routine work tasks" was inconsistent with the demands of level-three reasoning but consistent with the demands of level-two reasoning.[42] Thus, the RFC limitation to simple, routine, and repetitive tasks does not preclude either of the VE's proposed, level-two reasoning jobs.

Notably, Plaintiff alleges that the merchandise marker position should be eliminated due to the DOT requirement that employees attain precise set limits, tolerances, and standards.[43] Even

---

[39] *Id*.

[40] DOT, 209.587–034, 1991 WL 671802; DOT, 222.687–022, 1991 WL 672133.

[41] R. at 21.

[42] 395 F.3d 1168, 1176 (10th Cir. 2005).

[43] DOT, 209.587–034, 1991 WL 671802.

if this Court were to assume that Plaintiff could not perform the merchandise marker job, any error is harmless because there are still a high number of jobs remaining in the national economy.[44]

B.  MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ erred in her evaluation of the medical opinion evidence from Brett Seely, PA and Derek Knaphus, CMHC. He also alleges that the ALJ should have given more weight to the opinions of his treating providers but supports his claims with citations to outdated legal standards.[45] For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[46] Rather, the ALJ considers the opinions using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness of medical opinions are the supportability and consistency of such opinions.[47] Since Plaintiff's application was filed in 2019, the post-2017 legal standards apply in this case.[48]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[49] The ALJ must explain

---

[44] *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding harmless error when jobs that should not have been considered were eliminated and 152,000 jobs still remained).

[45] 20 C.F.R. § 404.1527.

[46] *Id*. § 404.1520c(a).

[47] *Id*. § 404.1520c(a), (b)(2).

[48] *Id*.

[49] *Id*. § 404.1520c(b).

how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[50] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[51] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[52]

PA Seely completed a mental impairment questionnaire and a physical medical source statement on behalf of Plaintiff.[53] PA Seely opined that Plaintiff had marked limitations in all areas of mental functioning. These limitations would result in Plaintiff being off-task 15% or more of a workday and would cause him to be absent from work two or more days per month. As to his physical limitations, PA Seely opined that Plaintiff could sit for up to 45 minutes at a time and stand for 20 minutes, and that he could sit for less than two hours in a workday and stand/walk for about two hours per workday. PA Seely opined that Plaintiff would need hourly breaks and should have his legs elevated for 25% of a workday. PA Seely also placed extreme limitations on Plaintiff's ability to use his arms, hands, and fingers. While PA Seely believed that Plaintiff was capable of low-stress work, he also believed that Plaintiff would be off-task 20% or more of the

---

[50] *Id*. § 404.1520c(b)(2).

[51] SSR 96-8p, 1996 WL 374184, at *7.

[52] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[53] R. at 729–40.

day and would be absent from work more than four days per month. CMCH Knaphus offered a less extreme assessment of Plaintiff's mental limitations, noting only marked limitations with respect to concentration, persistence, and pace.[54] He also opined that Plaintiff would be off-task between four and nine percent of a workday and would be absent two or more days per month.

      The ALJ found these opinions to be unpersuasive. In support of this conclusion, the ALJ cited two unremarkable examination notes, where it was noted that Plaintiff was alert and oriented; had appropriate or unremarkable eye contact, speech, and mood; and that his memory and concentration were normal.[55] Plaintiff faults the ALJ for simply relying on these two treatment notes, pointing out other notes in the record. However, an ALJ is not required to discuss all of the evidence and the ALJ did not simply rely on these two treatment notes in evaluating these opinions. Instead, the ALJ pointed to the psychological consultative examination that was conducted by Lane Adelin, Psy.D,[56] and to Plaintiff's statements about his activities of daily living. Both support the ALJ's decision to find PA Seely's and CMCH Knaphus's opinions unpersuasive.

      Moreover, a review of the record reveals a mixed picture as to Plaintiff's mental impairments. Plaintiff is correct that there are treatment notes showing that Plaintiff was depressed and anxious,[57] but there are other treatment notes that do not support the degree of limitations expressed by PA Seely and CMCH Knaphus. Those notes reflect that Plaintiff was in no acute distress; was well groomed; was alert, oriented, and cooperative; his mood was appropriate; and

---

[54] *Id*. at 720–28.

[55] *Id*. at 29–30 (citing R. at 340, 434).

[56] *Id*. at 330–36.

[57] *Id*. at 354, 359, 360, 370, 371, 373, 376, 400, 402, 403, 406, 414, 418, 464, 576, 577, 580, 584, 587, 590, 594, 597, 655.

his memory and concentration were normal.[58] Further, the treatment notes from CMCH Knaphus demonstrate that Plaintiff's condition improved with treatment and that Plaintiff was able to engage in a number of physical activities, including helping friends with odd jobs, repairing a sewer line, painting, cleaning his house, and yardwork.[59]

Plaintiff attacks the ALJ's reasoning, but in doing so, he essentially asks the Court to reweigh the evidence and substitute its judgment for that of the ALJ, which it cannot do.[60] The ALJ applied the proper standard and her finding that PA Seely's and CMCH Knaphus's opinions were unpersuasive is supported by substantial evidence. To be sure, there is evidence that could support a different conclusion, but "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[61]

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision of the Commissioner.

---

[58] *Id.* at 339, 340, 341, 344, 347, 349, 351, 357, 363, 366, 379, 387, 421, 434, 538, 542, 712, 761.

[59] *Id.* at 438, 439, 441, 442, 444, 445, 446, 452, 488, 491, 494, 498, 499, 500, 502, 505, 649, 653, 665, 677, 683.

[60] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

[61] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks omitted).

DATED this 27th day of September, 2022.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge